UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,

      Plaintiff,

vs.

NATIONAL RETAIL PROPERTIES, LP, a Delaware limited partnership,

      Defendant.

Case No. 4:18-cv-01875

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, NATIONAL RETAIL PROPERTIES, LP (doing business in Missouri as National Retail Properties, LP of Missouri) (sometimes referred to as "Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1. Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2. Defendant's property, a Denny's restaurant, is located at 1515 S. Hampton Avenue, St. Louis, Missouri 63139, in the City of St. Louis ("Denny's").

3. Venue is properly located in the Eastern District of Missouri because venue lies in the judicial district of the situs of the property. The Defendant's property is located in and does business within this judicial district.

4. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. See also 28 U.S.C. § 2201 and § 2202.

5. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA. Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility. The Plaintiff also suffers from low vision.

6. Mr. Nekouee traveled to Missouri every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, and now travels to the St. Louis area every three to six months to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

7. Fred Nekouee has visited the property which forms the basis of this lawsuit on September 24, 2018, and he bought goods and sought to avail himself of the services at Denny's on such date.

8. Fred Nekouee has visited the St. Louis area near the Denny's in June 2015; June 2016; September 2017; December 2017; July 2018; and September 2018.

9. Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the property.

10. The Plaintiff has definite plans and flight reservations to return to the St. Louis area and to the Denny's in December 2018.

11. Denny's is close to the hotels he stays at in the area and is close to the heavy equipment dealerships he visits.

12. Since Denny's is a national chain, the Plaintiff generally knows the quality of the food and beverages there. He has eaten at other Denny's.

13. The Plaintiff enjoys the food at Denny's.

14. For the reasons set forth in paragraphs 6-13 and 25, Fred Nekouee plans to return to the Denny's.

15. The Plaintiff has encountered architectural barriers at the subject property.

16. The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms in the Denny's.

17. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

18. The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

19. Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

20. On his visit to the Denny's, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles and walking surfaces (sidewalks).

21. The Plaintiff encountered and observed barriers to access the men's restroom in Denny's; and so, he also tried to use the women's restroom, in which women's restroom he also encountered and observed barriers to access.

22. The Plaintiff is deterred from visiting the Denny's even though he enjoys its food, because of the difficulties he will experience there until the property is made accessible to him in

a wheelchair.

23. Defendant owns, leases, leases to, or operates a place of public accommodation (restaurant) as defined by the ADA, 42 U.S.C. § 12181(7)(B), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA. The place of public accommodation that the Defendant owns, operates, leases or leases to is the Denny's.

24. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 28 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

25. Fred Nekouee desires to visit the Denny's not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

26. The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

27. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

28. Preliminary inspections of the Denny's have shown that violations exist. The

violations that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a. In the parking lot serving Denny's, there are no parking spaces for disabled patrons with van accessible signage in violation of Federal Law 2010 ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this lack of signage.

b. In the parking lot serving Denny's, the parking space for disabled patrons has an excessively steep running slope, as steep as 1:10.2 (9.8%), which slope is steeper than the maximum slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this steep slope in his wheelchair, and it made it very difficult for him to unload and load from his vehicle.

c. In the parking lot serving Denny's, the change in elevation from the sidewalk to the accessible route for disabled patrons is about 1 inch and greater than the maximum allowed change in elevation of 0.25 inches, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.2.   The Plaintiff encountered this change in elevation and it made him unstable in his wheelchair.

d.   As shown in the photographs below taken on September 24, 2018, in the parking lot, the access aisle serving the disabled parking spaces is as steep as 1:18.2 (5.5%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   Fred Nekouee used this access aisle in his wheelchair, and the excessively steep slope made him unstable in his wheelchair.





e.  The cross slope of the access aisle to the sidewalk is as steep as 1:33.3 (3%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.  The Plaintiff encountered this condition and it made him unstable in

6

his wheelchair.

f.  The cross slope of the accessibility ramp walking surface is as steep as 1:18.9 (5.3%), which slope exceeds the maximum allowed cross slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this steep cross slope and it made him unstable in his wheelchair.

g.  The slope of the surface within the entrance door required maneuvering space of 60 inches is as steep as 1:14.1 (7.1%), which slope exceeds the maximum allowed slope of 1:48 (2%) within the door maneuvering space, in violation of Federal Law 2010, ADAAG § 404.2.4.4.   The Plaintiff slipped sideways in his wheelchair within this space, and he required assistance to enter Denny's.

**ENTRANCE DOOR AND INTERIOR FOOD SERVICE AREA**

h.  The force needed to open the entrance door to Denny's is about 7 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff encountered this condition.

i.  The character height of the words on the signs at the counter are less than the minimum required character height of 5/18 of an inch (16 mm), in violation of Federal Law 2010, ADAAG § 703.5.5.   Due to the small character height, the Plaintiff could not read portions of these signs.

j.  The card reader screen on the counter in the restaurant is 50 inches above the finish floor, and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   In his wheelchair, the Plaintiff encountered this condition and it made it very difficult for him to access the card reader.

7

**MEN'S RESTROOM**

k.  The elapsed time for the men's restroom door to close from an open position of 90 degrees to 12 degrees from the latch is about three (3) seconds, and less than the required minimum time of five (5) seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1. The Plaintiff encountered this condition and the door closed on him in his wheelchair before he could fully move through the door.

l.  In the men's restroom, the door pull in the accessible toilet compartment is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.  In his wheelchair, the Plaintiff encountered this condition and he could not fully close the door to this compartment.

m.  In the men's restroom, the accessible stall width is about 49 inches and less than the minimum required width of 60 inches, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.  The Plaintiff encountered this condition and it made it very difficult for him to maneuver his wheelchair in this narrow space.

n.  In the men's restroom, the rear wall grab bar only extends 9 inches from the centerline of the water closet on one side and does not extend a minimum of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 604.5.2.  The Plaintiff encountered this condition and it made it difficult for him to support himself using the grab bar to transfer from his wheelchair to sit on the toilet.

o.  In the men's restroom, the grab bars are installed with the top of the gripping surface at about 31 inches above the finish floor and not within the required minimum of 33 inches (840 mm) and a maximum of 36 inches (915 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 609.4.  The Plaintiff had difficulty using these low bars to

position himself to use the toilet.

p. As shown in the photograph below taken on September 24, 2018, the lavatory pipes under the sink in the men's restroom are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5. In his wheelchair, the Plaintiff used this lavatory and risked skin burns and injury to his legs from the uninsulated pipes.



q. In the men's restroom, the urinal rim is 20 inches above the finish floor and higher than the maximum allowed height of 17 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 605.2. The Plaintiff observed this condition.

r. In the men's restroom, the flush control for the urinal is about 51.5 inches above the finish floor and higher than the maximum allowed height above the finish floor of 48 inches, in violation of Federal Law 2010, ADAAG §§ 605.4, 309. The Plaintiff observed this condition.

s. In the men's room, the space between the rear wall grab bar and the toilet cover

dispenser is about 7.5 inches and less than a minimum of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.  The Plaintiff had difficulty using the grab bar with this dispenser in the way.

    t.    The toilet paper dispenser in the men's restroom is outside the reach range of an individual in a wheelchair and not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.  The Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

    u.    The distance from the toilet centerline to the side wall on which the toilet paper dispenser is mounted is 32 inches and not between the required minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2.  The Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

    v.    In the men's restroom, the paper towel dispenser outlet is 50 inches above the finish floor and outside the reach range of an individual in a wheelchair of a maximum of 48 inches (1220 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   in his wheelchair, the Plaintiff could not reach the paper towel dispenser outlet to obtain a paper towel.

    w.    In the men's restroom, the bottom edge of the mirror's reflecting surface is 42 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 60303.   In his wheelchair, the Plaintiff could not see his full face in the mirror due to the height of the mirror's reflecting surface above the finish floor.

    x.    In the men's restroom, the flush control on the water closet is not on the open and

wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6. Due to this condition, the Plaintiff had difficulty flushing the toilet.

y.   In the men's restroom, the coat hook in the men's restroom is installed at 54 inches above the finish floor, which height is outside the reach range of an individual in a wheelchair of a maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   The Plaintiff could not reach this coat hook when he used the toilet.

### WOMEN'S RESTROOM

z.   Fred Nekouee encountered barriers to access in the men's restroom, so he tried the women's restroom to, among other things, wash and dry his hands.  In the women's restroom, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   Fred Nekouee observed this condition.

aa.   In the women's restroom, the accessible stall width is about 48 inches and less than the required minimum of 60 inches for a wheelchair accessible compartment, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   The Plaintiff encountered this barrier to access and it deters him from visiting Denny's.

bb.   In the women's restroom, the toilet compartment does not have a rear wall grab bar, in violation of Federal Law 2010, ADAAG § 604.5.   The Plaintiff observed this condition and it deters him from visiting Denny's.

cc.   In the women's restroom, the side wall grab bar is 37 inches long and less than the required minimum of 42 inches (1065 mm), in violation of Federal Law 2010, ADAAG § 604.5.1.   Fred Nekouee observed this side wall grab bar, and it deters him from visiting

Denny's.

dd. In the women's restroom, the side wall grab bar only extends about 42 inches from the rear wall including void space, and does not extend the required minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1. The Plaintiff observed this condition and it deters him from visiting Denny's.

ee. As shown in the photograph below taken on September 24, 2018, the lavatory pipes under the sink in the women's restroom are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.  The Plaintiff encountered this lack of insulation when he used the sink, and it deters him from visiting Denny's.



ff. In the women's restroom, the toilet paper dispenser is outside the reach range on an individual in a wheelchair, which dispenser centerline is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.  The Plaintiff observed this condition.

12

gg. In the women's restroom, the distance from the toilet centerline to the side wall upon which the toilet paper dispenser is mounted is 30 inches and not between the required minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2.  The Plaintiff observed this condition, and it deters him from visiting Denny's.

hh. In the women's restroom, the water closet does not have a flush control mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6.  The Plaintiff observed this condition, and it deters him from visiting Denny's.

ii. In the women's restroom, the coat hook is installed about 57 inches above the finish floor and outside the reach range of an individual in a wheelchair of a maximum reach height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.  The Plaintiff observed this condition, and it deters him from visiting Denny's.

jj. In the women's restroom, the floor drain is within the accessible toilet compartment and the change in the elevation of the floor is about 0.75 inches, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.2.  The Plaintiff encountered this condition, and it made it difficult for him to maneuver his wheelchair.

29. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

30. The discriminatory violations described in paragraph 28 are not an exclusive list of the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating

the ADA and all of the barriers to access.  The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.  In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

31. Defendant has discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

32. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

33. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's

fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

34. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

35. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

36. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Denny's restaurant and adjacent parking lot spaces to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

      a.      The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

      b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

      c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

      d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

      Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net
*Attorney for Plaintiff Fred Nekouee*